### THE NEW HAMPSHIRE.

(Circuit Court of Appeals, Second Circuit. March 8, 1905.)

#### No. 112.

1. COLLISION—STEAMBOAT AND TUG WITH TOW CROSSING—STARBOARD-HAND RULE.

Evidence *held* to sustain the finding of the trial court that at the time of a collision between a steamboat passing down East river and a car float in tow alongside of a tug crossing to Brooklyn there was not such fog as to render the starboard-hand rule inapplicable, and that the collision was due to the fault of the steamboat in failing to observe such rule and keep out of the way by stopping and reversing until the tug and tow had passed in accordance with the latter's signal.

2. SAME—NAVIGATION OF EAST RIVER—POSITION OF VESSEL IN CHANNEL.

A tug with two long car floats in tow alongside was not in fault for being on the east side of the channel in East river in passing up to make a landing on the Brooklyn side, where such position was necessary and customary to enable her to round to and land safely in the then state of the tide.

Appeal from the District Court of the United States for the Southern District of New York.

The libel was filed by Frank J. McBride, master of the steam tug Lowell M. Palmer, on behalf of himself and all others interested in said tug and car float No. 8 and the cars laden thereon and the contents of the same, which said float was being towed by the tug, against the steamboat New Hampshire

136 F.—49

(the Providence & Stonington Steamship Company, claimant), to recover damages for the sinking of said car float No. 8 and the cars and their contents loaded on said float, which was caused by a collision with the said steamboat occurring in the East river March 13, 1903. All the testimony was taken in the presence of the District Judge, who found in favor of the libelant. The damages being stipulated, a decree was entered against the New Hampshire April 4, 1904, for $19,381.34. From this decree the claimant appeals. .

Charles C. Burlingham, for appellant.

La Roy S. Gove, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. On the morning in question the tug Palmer, with a loaded car float on each side, rounded the Battery into the East river intending to land at North Fifth street, Brooklyn. When off Houston street the New Hampshire was sighted, about off Fourteenth street, coming down the river. The tide was strong flood. The Palmer under a hard aport helm was heading for Brooklyn. On discovering the steamboat she blew a single blast of her whistle and there is testimony that the New Hampshire answered the signal by a similar blast, but this is denied by her master. The navigation of the New Hampshire indicating that she had mistaken the signal or was not conforming her navigation thereto, a second signal of one whistle was given by the Palmer and answered by the New Hampshire. Shortly thereafter the New Hampshire struck the car float No. 8 on her port quarter, sinking her with the loaded cars she was carrying. The collision occurred in the vicinity of the Tenth street buoy.

The District Judge found that the situation was one which warranted the application of the starboard-hand rule, and that, though there was light fog generally, and occasional patches of heavy fog, there was nothing to prevent the vessels from seeing each other when they were from a third to a half a mile apart. The claimant insists that this was error; that the weather was too thick to warrant the application of the ordinary rules of navigation; that the tug should have been inculpated for not blowing fog signals and for keeping on the westerly side of the channel. The claimant also insists that the starboard-hand rule was inapplicable for the additional reason that the vessels were approaching a bend in the river and the situation was only temporary. The decision was rendered orally immediately after the advocates had completed their arguments and the suggestion is made that if "the learned District Judge had deferred his decision until he had gone over the evidence carefully" he might have reached a different conclusion as to the density of the fog. We are unable to agree with this view. The judge had seen and heard all the witnesses and listened to the arguments of the advocates; the entire matter was fresh in his mind and there could not have been a more favorable opportunity for reaching a correct conclusion upon the questions of fact. If the judge had waited until time and a multitude of intervening events had dulled and confused the impressions formed at the trial there is no reason to suppose that the decision would have been more satisfactory—indeed the contrary is true. The judge finds

that above Hell Gate and at Fortieth and Thirty-Fourth streets there was heavy fog on the morning in question. He also finds that the preponderance of evidence is to the effect that in the vicinity of Tenth street it was so light that the vessels could have seen each other at least a third of a mile apart. We see no reason to disturb this finding of fact, which practically disposes of the entire controversy. As the New Hampshire saw, or could have seen, the Palmer in ample time to avoid collision and as the latter was crossing towards Brooklyn under a port helm, exhibiting her port side to the New Hampshire, it is manifest that the steamboat had the tug on her starboard bow, and that it was her duty to keep out of the way. The master of the New Hampshire testified that he first saw the Palmer on his starboard bow about two points.

We recently had occasion to consider and quote the rules applicable to this situation in the case of the City of New York v. The N. Y. and East River Ferry Co., 135 Fed. 344. We do not deem it necessary to restate them here or to comment upon them further than to say that the navigation of the tug seems to have been in compliance with their provisions. She gave the proper signals and she held her course and speed. The New Hampshire was a passenger boat 310 feet long and, with the tide against her, could be handled with far greater ease and celerity than the Palmer. The latter, between two heavy car floats, was drifting up on an unusually strong flood tide. She is 100 feet long and the floats projected 100 feet ahead of her stem, a most ungainly and ungovernable combination for the execution of a quick or difficult maneuver. On the other hand, the New Hampshire was under perfect control and as she could have seen the situation ahead in ample time to have stopped, her failure to do so was negligence. In other words, the moment she discovered the Palmer it was obvious that a grave danger confronted her. It was her duty to keep out of the way, she could have done so by reversing but this she did not do. We agree with the District Judge in thinking that "the fault was that under the circumstances the New Hampshire should have reversed and held back until the Palmer got across."

No fault can be imputed to the tug because she was on the westerly side of the channel; it was necessary for her to be there in order to make her landing safely on the Brooklyn side. One of the witnesses testifies:

"They generally go in there to get in shape to round-to to land in Brooklyn on the flood tide. * * * It is their custom to go on the New York shore and round-to a little better than the middle of the river."

We are unable to find that there is a bend in the river at the point in question sufficient to change the rules of navigation ordinarily applicable to such a situation. A casual examination of the chart submitted indicates that the bend referred to is due rather to a widening of the river than to a sharp turn in its course.

The decree of the District Court is affirmed with interest and costs.